IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS COOPER,

                Plaintiff,

  v.

BRITTANY ROACH, SANDRA McARDLE,
MICHAEL KEMERLING, ALEXANDRIA LEIBERT,
and HEATHER SCHWENN,

                Defendants.

OPINION and ORDER

19-cv-159-jdp

---

Pro se plaintiff Demetrius Cooper is incarcerated at Wisconsin Secure Program Facility (WSPF). He is proceeding on Eighth Amendment medical care, failure-to-protect, and conditions-of-confinement claims, First Amendment retaliation claims, and state-law negligence claims against various WSPF officials. He says the officials failed to respond adequately to his physical and mental health needs, subjected him to unconstitutional conditions of confinement, and retaliated against him for filing a grievance. There are six motions currently before me: a motion for leave to file an amended complaint, Dkt. 16; two motions seeking preliminary injunctive relief, Dkt. 10 and Dkt. 13; a motion for sanctions, Dkt. 26 and Dkt. 31; a motion to strike defendants' affirmative defenses, Dkt. 40; and a motion asking the court to strike his deposition and recruit counsel for him, Dkt. 49. (Cooper recently filed two additional motions related to discovery, Dkt. 50 and Dkt. 51, which are not yet fully briefed.)

For the reasons explained below, I will grant Cooper's motion to amend his complaint. I will grant his motion to strike defendants' affirmative defenses in part. His remaining motions will be denied.

## A. Motion for leave to amend

Cooper seeks to amend his complaint to add additional claims against defendant Heather Schwenn, a WSPF psychologist. Cooper says that while he was in clinical observation on April 15, 2019, Schwenn refused to give him an extra pillow, even though she knew that Cooper is authorized to have an extra pillow as treatment for his gastroesophageal reflux disease (GERD). Cooper says that going without the extra pillow caused him to "vomit and choke severely for three days." Dkt. 16, ¶ 14. Schwenn also refused to give Cooper a blanket, even though the temperature was so cold that Cooper "could not stop shaking from the ice cold air." *Id.* ¶ 9. Cooper says that when he asked Schwenn why she was giving other inmates blankets but not him, Schwenn told him that she "do[esn't] give property to people who ha[ve] lawsuits against [her]." *Id.* ¶ 10.

Cooper asks for leave to proceed on an additional First Amendment claim against Schwenn "because her action[s] were in retribution for this lawsuit." *Id.* ¶ 15. He also seeks to add an Eighth Amendment medical care claim based on Schwenn's denial of the medically necessary extra pillow, and an Eighth Amendment conditions-of-confinement claim based on Schwenn's denial of the blanket.

Under Federal Rule of Civil Procedure 15(a)(2), courts should freely give plaintiffs leave to amend their complaints when justice so requires. It is still relatively early in the case, and the claims that Cooper seeks to add are closely related to the claims on which I have already granted him leave to proceed. And his allegations state viable claims under the First and Eighth Amendments.

Cooper states a First Amendment claim because he alleges that he engaged in protected activity (filing this lawsuit) and suffered a deprivation that would likely deter that activity in

2

the future as a result (denial of a blanket and an extra pillow). *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (discussing the elements of a First Amendment retaliation claim). Typically I would not permit a prisoner to add new claims based on an allegation that he has been retaliated against for filing the underlying lawsuit. *See, e.g.*, *Atkinson v. Mackinnon*, No. 14-cv-736-bbc, 2015 WL 13658057, at *1–2 (W.D. Wis. Oct. 29, 2015) ("These types of retaliation claims risk delaying resolution of the case indefinitely while the parties litigate and conduct discovery on each discrete instance of retaliation that may occur while the lawsuit progresses."). But I will make an exception here, because it is still early in the case and because the incident at issue is closely related to the existing claims.

Cooper also states additional claims against Schwenn based on the April 15, 2019 incident under the Eighth Amendment standards I explained in my earlier screening order. His allegation that Schwenn refused to give him a blanket states a conditions-of-confinement claim because Cooper says he was subjected to dangerously cold temperatures as a result, and I can infer that Schwenn was aware of those temperatures. And his allegation that Schwenn refused to give him an extra pillow states a medical care claim because I can infer at screening that Cooper's GERD was a serious medical need, that Schwenn was aware of that need, and that she consciously disregarded that need when she refused to give him the extra pillow.

I will grant Cooper's motion and allow him to proceed on three additional claims against Schwenn. I will consider Dkt. 1 and Dkt. 16 to be the operative complaint.

B. **Motions for injunctive relief**

Cooper has filed two motions seeking immediate intervention by the court. *See* Dkt. 10 and Dkt. 13. In the first motion, Cooper asked me to order Schwenn to (1) provide "adequate bedding, clothing, hygiene while in clinical observation"; (2) "stop falsifying Cooper's health

3

records"; and (3) have "no further interactions with Cooper." Dkt. 10, at 1. In the second motion, he asked me to "force WSPF to issue . . . inmates a blanket while in clinical observation" to combat the freezing temperatures. Dkt. 13, at 2. In my earlier screening order, I denied Cooper's request for an order directing Schwenn to "stop falsifying Cooper's health records" and have "no further interactions with Cooper," because Cooper failed to provide specific facts that supported his need for such relief. Dkt. 14, at 15. But I ordered defendants to respond to Cooper's allegation that he was not being provided with hygienic necessities and was enduring freezing temperatures while in clinical observation. I asked them to provide an account of what items Cooper is permitted to retain in clinical observation and, if blankets, clothing, and hygiene items are disallowed, an explanation why.

Defendants have filed a response. Dkt. 20. In it, they summarize the institution's policies governing what property items an inmate may have while in clinical observation. Generally, inmates in clinical observation receive suicide-resistant clothing (typically a smock or gown), a security mat, bar or liquid soap, a washcloth, bag meals, toilet paper, health service request and psychological service request forms, and a crayon. Cooper didn't identify the dates of the clinical observation stays in question in his original motions, but defendants infer from exhibits Cooper attached to his motions that he was complaining about conditions during his March and June 2019 observation stays. *See* Dkt. 20, at 3 (citing Dkt. 11-1, at 9 and Dkt. 13-3, at 1). Defendants say that Cooper received the property items that were permitted under the clinical observation property policy in March and June of 2019, including a washcloth, soap, and toilet paper.

Cooper does not deny this in his reply brief. Instead, he says that he was denied hygiene items during other stints in clinical observations in November 2018, December 2018, and April

4

of 2019. (I have already granted Cooper leave to proceed on a conditions-of-confinement claim based on the December 2018 hygiene-item-denial incident. *See* Dkt. 14, at 11–12.) Because Cooper did not specifically identify the dates associated with the allegations he made in his original motions, defendants did not have an opportunity to respond to these new, date-specific allegations. This is why it is so important for litigants to be specific when they set out the findings of fact that support the need for an injunction.

Cooper's allegations about his need for a blanket run into the same problem. Unlike hygiene items, blankets are not among the property items provided to inmates in clinical observation under institution policy. *See* Dkt. 21-1. This doesn't pose a risk of harm to inmates like Cooper, defendants say, because the temperature in clinical observation is regulated to stay "around 71 degrees Fahrenheit to 73 degrees Fahrenheit during the heating season which averages October to May," and "no lower than 80 degrees Fahrenheit" during "the non-heating months." Dkt. 22, ¶ 6. Defendants include a declaration from Stanley Portratz, the superintendent of buildings and grounds at WSPF, who says that to his knowledge, the automation system that monitors the air temperature was working properly during Cooper's March and June 2019 observation stays.

In his reply, Cooper says that defendants are lying about the temperatures at which clinical observation cells are routinely kept. But the only specific instances that he cites are from November 2018, December 2018, and April 2019—dates he did not mention in his original motions. Once again, Cooper's failure to provide sufficient detail deprived defendants of an opportunity to fully respond to his allegations. Because the parties' filings discuss different dates, I can't determine whether there are factual disputes that might require an

evidentiary hearing. I will not consider holding an evidentiary hearing or issuing preliminary injunctive relief based on assertions that defendants haven't had an opportunity to address.

I will therefore deny Cooper's motions for injunctive relief without prejudice. If he chooses to renew his request for a preliminary injunction, he must submit specific findings of fact—including the precise dates of the underlying incidents—so that defendants have an opportunity to respond to them.

## C. Motion for sanctions

Cooper moves for sanctions under Federal Rule of Civil Procedure 11. Dkt. 26. He contends that Schwenn made three false statements in the declaration she submitted in connection with defendants' response to his motions for preliminary injunctive relief. Dkt. 21. First, he says that Schwenn lied when she asserted that "blankets are no longer a required property item" under the policy governing clinical observation status. Dkt. 26, ¶ 3. But Schwenn provided a copy of the policy, *see* Dkt. 21-1, and Schwenn did not mischaracterize it. Second, he says that Schwenn lied when she said that Cooper has a history of misusing blankets while in clinical observation status. Cooper says that "there is no document or evidence of Cooper ever misusing a blanket." Dkt. 26, ¶ 8. But just because Schwenn didn't provide documentary evidence doesn't show that she is lying. And there is such evidence elsewhere in the record. Dkt. 11-1, at 9 (clinical note discussing occasions on which Cooper has previously covered his camera). Third, Cooper says that Schwenn lied when she said that Cooper could potentially cover his in-cell camera or hide his entire body from view with a blanket were staff to provide him one. Cooper says that both of these things are physically impossible because "one cannot hang a blanket from a camera or use a 4.5 [foot long] blanket to cover a 6 foot tall man." *Id.* ¶ 7. But documents in the record show that Cooper has managed to block his

6

camera successfully in the past. Dkt. 11-1, at 9. And Cooper doesn't explain why a six-foot-tall man couldn't cover his entire body with a blanket by simply curling up under it. It is clear that Rule 11 sanctions are not warranted, so I will deny Cooper's motion.

**D. Motion to strike affirmative defenses**

Cooper has filed a motion to strike three affirmative defenses asserted in defendants' answers: failure to exhaust, qualified immunity, and sovereign immunity. Generally, motions to strike are disfavored because they often serve only to delay. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). As I have previously explained to Cooper, as the party moving to strike, he "has the burden to show 'that the challenged allegations are so unrelated to plaintiff's claims as to be devoid of merit, unworthy of consideration, and unduly prejudicial.'" *Cooper v. McGowan*, No. 17-cv-383-JDP, 2018 WL 2223671, at *5 (W.D. Wis. May 15, 2018) (quoting *Kaufman v. McCaughtry*, No. 03-cv-27, 2003 WL 23095690, at *1 (W.D. Wis. May 22, 2003)). A motion to strike should "not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citation and quotation marks omitted).

Cooper has met that burden as to only one of the three affirmative defenses he challenges: sovereign immunity. Defendants say that they raised the defense because they weren't sure whether Cooper was suing them in their official or personal capacity. But the law on this issue is clear: a plaintiff may sue a state actor in his personal capacity for damages or in his official capacity for injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 165–67, n.14 (1985); *Greenawalt v. Indiana Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005). Because the law on this issue is well established, courts in this circuit do not require plaintiffs to specify

whether an individual is being sued in his personal or official capacity. Rather, courts look at the nature of the claim and the relief sought. *See, e.g., McGee v. Ill. Dep't of Transp.*, No. 02 C 0277, 2004 WL 726110, at *1 (N.D. Ill. Apr. 1, 2004) ("In cases where a plaintiff seeks injunctive relief from official policies and customs, the Seventh Circuit treats the claim as an official capacity suit, but where the plaintiff alleges the tortious conduct of an individual acting under color of state law, the suit is considered to be against the individual."). The same is true in this case. Cooper's claims for damages are personal-capacity claims; his request for injunctive relief are official-capacity claims. Because Cooper isn't proceeding on any claims that implicate sovereign immunity, that affirmative defense is moot.

I will deny Cooper's motion to strike the other affirmative defenses. Cooper contends that he has exhausted his administrative remedies and that defendants aren't entitled to qualified immunity because they violated clearly established law. Both of these arguments essentially ask me to resolve these affirmative defenses on the merits, which is premature in a Rule 12(f) motion to strike. *See Seabolt v. Champagne*, No. 05-C-1240, 2006 WL 3192511, at *5 (E.D. Wis. Nov. 2, 2006). Cooper may contest these defenses if defendants raise them at summary judgment or trial.

**E. Motion to strike deposition order and for assistance in recruiting counsel**

On October 15, 2019, Magistrate Judge Stephen Crocker preemptively granted defendants leave to depose Cooper. Dkt. 47. Cooper then filed a motion asking me to strike that order and quash his deposition or, in the alternative, to recruit counsel for him. Dkt. 49. He says that he has "not been provided a copy of the defendants['] motion" seeking leave to depose him. *Id.* ¶ 3. He also says that "any question that the defendants may have" are

sufficiently addressed by his medical file, and that a deposition will "only serve to . . . intimidate, harass, and bully" him. *Id.* ¶¶ 4, 5.

I will deny Cooper's motion. Federal Rule of Civil Procedure 30(a)(2)(b) requires defendants to seek leave of court before taking the deposition of a witness confined in prison. The court must grant leave if the deposition seeks relevant information that is proportionate to the needs of the case and if the deposition is within the limits imposed on discovery generally. Cooper may believe that a deposition is not necessary in this case, but that is not his call to make. He adduces no evidence or good reason to believe that defendants will use the deposition as an opportunity to bully him. Depositions are commonplace in federal litigation. Plaintiffs who choose to file in federal court can expect to be deposed. So I will not strike the order granting defendants leave to take Cooper's deposition.

As for Cooper's renewed request for assistance in recruiting counsel, I will deny that motion as well. Cooper's motion reiterates many of the reasons he gave in his prior motion for assistance in recruiting counsel. He says that the issues in this case are complex, that he has limited access to the law library and knowledge of the law, and that counsel would be better able to marshal evidence and cross-examine witnesses. He also says that counsel would be able to help Cooper navigate any potential deposition by advising him of his "rights against self-incrimination." *Id.* ¶ 11. Cooper explains that he is "afraid that he might be asked to say things in the deposition which could be used in or used against him in a criminal prosecution." *Id.* ¶ 12.

I do not doubt that, like almost all of this court's pro se litigants, Cooper would benefit from the assistance of counsel. But there simply are not enough lawyers willing to take these types of cases to give each plaintiff one. Cooper's anxiety about being deposed without a lawyer

9

is understandable, but depositions in these kinds of cases are routine and do not require any particular legal knowledge or expertise. All Cooper needs to do is answer the questions he is asked honestly and to the best of his ability. If he finds a question confusing, he may ask for clarification. If he doesn't know the answer to a question, he can say so. The focus of the deposition will be the facts of Cooper's case. Those facts are fairly straightforward and don't have any apparent connection to a potential criminal investigation or prosecution, so I see no basis for Cooper's concerns about self-incrimination.

As I have previously explained to Cooper, *see* Dkt. 14, at 16–17, it is still too early to tell whether the complexity of this case exceeds Cooper's ability to litigate it. The deadline for defendants' motion for summary judgment for failure to exhaust administrative remedies is still several weeks away, and it is this court's general policy to defer decisions about counsel until after any issues about exhaustion of administrative remedies has been resolved. So I will deny Cooper's motion without prejudice.

ORDER

IT IS ORDERED that:

1. Plaintiff Demetrius Cooper's motion for leave to file an amended complaint, Dkt. 16, is GRANTED.

2. Cooper is GRANTED leave to proceed on the following claims:

    a. Eighth Amendment medical-care claims against defendants Brittany Roach, Sandra McArdle, and Heather Schwenn.

    b. Wisconsin-law medical malpractice claims against McArdle.

    c. Eighth Amendment failure-to-protect claims against defendants Michael Kemerling and Alexandria Leibert.

    d. Wisconsin-law negligence claims against Kemerling and Leibert.

    e. Eighth Amendment conditions-of-confinement claims against defendant Heather Schwenn.

    f. First Amendment retaliation claims against Schwenn.

3. Cooper's motions for preliminary injunctive relief, Dkt. 10 and Dkt. 13, are DENIED.

4. Cooper's motion for sanctions, Dkt. 26 and Dkt. 31, is DENIED.

5. Cooper's motion to strike, Dkt. 40, is GRANTED as to defendants' sovereign immunity defense. The motion is DENIED in all other respects.

6. Cooper's motion to strike defendants' motion seeking leave to depose him and for assistance in recruiting counsel, Dkt. 49, is DENIED.

Entered November 1, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge