IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS COOPER,

                Plaintiff,

  v.                                                       OPINION and ORDER

BRITTANY ROACH, SANDRA McARDLE,
MICHAEL KEMERLING, ALEXANDRIA LEIBERT,           19-cv-159-jdp
and HEATHER SCHWENN,

                Defendants.

---

      Pro se plaintiff Demetrius Cooper is proceeding on Eighth Amendment medical care, failure-to-protect, and conditions-of-confinement claims, First Amendment retaliation claims, and state-law negligence claims against various officials at Wisconsin Secure Program Facility, where Cooper is currently incarcerated. Cooper says that the WSPF officials failed to respond adequately to his physical and mental health needs, subjected him to unconstitutional conditions of confinement, and retaliated against him for filing a grievance. Cooper has filed eight motions raising three main issues: (1) four motions related to a discovery dispute with defendant Sandra McArdle, Dkt. 50, Dkt. 51, Dkt. 52, Dkt. 59; (2) three motions related to Cooper's allegations that defendants have intentionally destroyed material evidence, Dkt. 66, Dkt. 75, Dkt. 79; and (3) a motion reiterating his previous request that I order WSPF to give him more time in the law library. Dkt. 78.

      For the reasons explained below, I will deny all of Cooper's motions with one exception: I will reserve ruling on the portion of Cooper's motion to compel that asks me to order McArdle to supplement her responses to some of Cooper's interrogatories and requests for admission. At the time McArdle provided her initial discovery responses, she did not have access to

Cooper's medical records and thus didn't have the information she needed to respond. I will order the parties to provide an update on whether McArdle has obtained these records and supplemented her discovery responses accordingly.

**A. Discovery dispute with defendant Sandra McArdle**

Cooper's first set of motions relate to a discovery dispute with one of the defendants, former WSPF nurse practitioner Sandra McArdle. Cooper alleges that McArdle violated his rights under the Eighth Amendment by discontinuing his prescription for Meloxicam, an anti-inflammatory medication, without first assessing him. McArdle no longer works at WSPF, and she is represented in this case by a private law firm. (The other defendants are employed by the Wisconsin Department of Corrections, so they are represented by the Wisconsin Department of Justice.) Cooper sent counsel for McArdle several requests for production, interrogatories, and requests for admission early in this case—prior to the October 9, 2019 preliminary pretrial conference that marked the start of discovery. McArdle provided written responses to Cooper's discovery requests in which she raised various objections to his requests. Cooper then filed four motions: (1) a motion asking me to order McArdle to meet with him for a discovery conference under Federal Rule of Civil Procedure 26(f), Dkt. 50; (2) a motion to compel McArdle to respond or supplement her responses to interrogatories 3–11, requests for production 1–6, and requests for admission 1–15, Dkt. 59; (3) a motion for sanctions against McArdle's counsel based on counsel's alleged history of "engag[ing] in unfair and unethical discovery patterns in most cases he represent[s]," Dkt. 51, ¶ 9; and (4) a letter asking me to order McArdle's counsel "to maintain professional conduct," Dkt. 52, at 2.

Cooper's motion seeking a Rule 26(f) conference is now moot, because counsel for McArdle ended up having a telephonic conference with Cooper a little over a week after

Cooper's motion was filed. Cooper's remaining motions all go to the adequacy of McArdle's discovery responses, which I turn to now.

1. **Requests for production**

Cooper served McArdle with six requests for production of documents:

1. Any and all emails related to Demetrius Co[o]per.

2. Any and all statements made, originals or copies identified as reports, incident reports, complaints, ICE complaints dept.[] communications, discipline, any communication to or between Jolinda Waterman and Sandra McArdle or ICE complaint dept. about complaint No. WSPF-2018-25647.

3. A copy of any medical records or medication profile, or pr[e]scribes orders that indicate Cooper [was] receiving both ibuprofen and meloxicam at the same time on 11-29-18.

4. Any and all rules, regulations, and policies about treatment of prisoners.

5. Any and all rules, rules, regulations, and polic[i]es about discontinuing medications.

6. A copy of Sandra McArdle's work rules, job duties, and job descriptions.

Dkt. 59-1, at 12–13. The only document McArdle produced in response was a copy of her position description, which was responsive to Cooper's sixth request. *See id.* at 15–17. She objected to the remaining requests, contending that they were irrelevant, overly broad, and not proportional to the needs of the case. She also said that many of these documents weren't in her possession, given that she no longer works for WSPF.

Under Rule 34, a party is only required to produce documents or other information that is within its "possession, custody, or control." McArdle no longer works for WSPF, so she presumably no longer has possession, custody, or control over internal DOC communications, policy documents, or medical records. McArdle cannot produce documents that she does not

3

have. Cooper should be able to obtain these documents through other defendants, or in some cases, by simply requesting them from prison staff. And even if McArdle still had access to these types of documents, I would deny Cooper's motion to compel on interrogatories 1 and 4 because those production requests are far too broad. It is not reasonable or proportional to require the DOC to generally produce "all emails" related to a particular inmate, or "all rules, regulations, and policies about treatment of prisoners." Cooper needs to formulate more specific requests that seek only information relevant to his claims.

2. **Interrogatories and requests for admission**

Cooper also asks me to compel McArdle to supplement her responses to 9 of his 11 interrogatories, *see id.* at 8–10, and all of his requests for admission, *see id.* at 18–20.[1] Some of Cooper's requests are overbroad or vague, so I will deny his motion to compel McArdle to respond to them. Other requests are sufficiently narrow and specific, but answering them will require McArdle to review records that she did not have access to at the time she responded to Cooper's discovery requests. I will reserve ruling on that second aspect of Cooper's motion to compel until the parties have provided an update about whether McArdle has had an opportunity to obtain the records she needs and supplemented her discovery responses accordingly.

---

[1] Although Cooper asks for an order compelling McArdle to "answer requests for admission 1–15," Dkt. 59, at 1, McArdle admitted to the first of Cooper's 15 requests for admission. *See* Dkt. 59-1, at 18 ("1. Admit that you are employed as a nurse practitioner at WSPF. RESPONSE: This Defendant admits she provided certain medical care to prisoners at WSPF."). I assume Cooper's objections are limited to the other 14 requests for admission, which McArdle denied.

### a. Overbroad or vague requests

McArdle objected to four of Cooper's interrogatories for being overbroad or vague, among other reasons:

> 3. Is your normal practice to remove patients from their medications without first assessing them?
>
> ANSWER: Objection. This Request calls for speculation as to what is meant by "assessing." It is also vague, as it does not specify the medication, the condition or any of the circumstances that led to the use of the medication. This request also requires Defendant to speculate concerning the similarity of how Plaintiff's issues may have been treated in comparison to those of others. Each medical condition and patient is treated individually.
>
> . . .
>
> 9. Were you ever disciplined?
>
> ANSWER: Objection – vague, ambiguous, overly broad, unlimited in time and scope and overly burdensome. This Defendant also objects to this request based upon the proportionality rule.
>
> 10. What do you remember about this incident?
>
> ANSWER: Objection – vague, ambiguous, overly broad, unlimited in time and scope and overly burdensome. This Defendant also objects to this request based upon the proportionality rule. Defendant objects further as it requires speculation as to what "this incident" is referring to. This request calls for a narrative response more properly provided in the form of oral testimony.
>
> 11. Identify and attach a copy of any and all documents related to prison medical staff training and education.
>
> ANSWER: Objection – vague, ambiguous, overly broad regarding which Prison is referred to, unlimited in time and scope and overly burdensome. This Defendant also objects to this request based upon the proportionality rule.

Dkt. 59-1, at 8, 9–10. McArdle also raised similar objections to one of Cooper's requests for admission.

5

> 15. Admit that you should not remove a patient from prescribed medication without first assessing him.
>
> RESPONSE: This Defendant is without knowledge or information sufficient to form a belief as to this Request, and therefore, denies the same. This Defendant has not received a copy of the medical records or any prison records. Further objecting, this request is vague, overly broad, irrelevant to the allegations asserted in the Plaintiff's Complaint and requires this Defendant to speculate as to the type of medication and the medical context and situation [in] which medication was administered.

*Id.* at 20.

I agree with McArdle that these requests are improper. Interrogatories 3 and 10 and request for admission 15 are too vague to give McArdle reasonable notice of what information would be responsive. For instance, in interrogatory 3 and request for admission 15, Cooper doesn't explain what he means by "assessing." Does it mean physically examining or interviewing a patient? Does simply reviewing a patient's medical records qualify as assessing? Cooper also doesn't explain what he means by the broad term "medication." McArdle's practices might reasonably vary depending on the type of medication at issue. As for interrogatory 10, Cooper doesn't explain what "this incident" refers to. At minimum, he needs to limit the request by date and provide some additional detail about the incident at issue so that McArdle can reasonably understand what is being asked of her.

Interrogatories 9 and 11 are problematic because they are overbroad. Under Rule 26(b)(1), Cooper is entitled only to discovery that is relevant to his claims and proportional to the needs of the case. Requiring McArdle to disclose all (presumably employment-related) discipline and produce all documents related to the training and education of medical staff would go well beyond the bounds of what is relevant to Cooper's claims.

I will therefore deny Cooper's motion to compel on interrogatories 3, 9, 10, and 11 and request for admission 15.

### b. Requests that McArdle lacked sufficient information to answer

The remaining disputed discovery requests ask McArdle to provide information that she might reasonably need to review Cooper's medical records to answer. They include five interrogatories:

> 4. On 11-29-2018 how many time[s] did [you] speak to Cooper about Meloxicam?
>
> 5. On 11-29-19 how many time[s] did you assess Cooper related to Cooper['s] wrist [and] frozen shoulder injury?
>
> 6. Why did you remove Cooper from Meloxicam on 11-29-18?
>
> 7. Why did you not provide Cooper a substitute for inflammation?
>
> 8. Did you speak to Dr. Manlove who prescribed Cooper Meloxicam about Cooper's injury and medications?

*Id.* at 8–9, and thirteen requests for admission:

> 2. Admit that Cooper was receiving Meloxicam as an anti-inflammatory.
>
> 3. Admit that Cooper was treated with Meloxicam due to a past wrist injury and now recent frozen shoulder?
>
> 4. Admit that Cooper was prescribed Meloxicam by Dr. Manlove in Waupun Correctional Inst on 2-27-17 for a wrist injury.
>
> 5. Admit that from 2-27-17 to [sic] you did not assess Cooper on or before 12-1-18 related to Cooper's wrist or shoulder injury.
>
> 6. Admit that in between 2-27-17 and 12-1-18 you did not ask Cooper if he still need[ed] to take Meloxicam.
>
> 7. Admit that you discontinued Cooper from receiving Meloxicam on 11/29/18 without assessing him.

7

> 8. Admit that on 11-29-18 Cooper was not receiving both Meloxicam and Ibuprofen.
>
> 9. Admit that you did not provide Cooper Ibuprofen as an alternative or substitute on 11-29-18.
>
> 10. Admit that you did not provide Cooper any alternative or substitute for inflammation on 11-29-18.
>
> 11. Admit that I wrote several health service requests, requesting to be placed back on Meloxicam.
>
> 12. Admit that you did not respond to several health services request that informed you of my resulting inflammation.
>
> 13. Admit that I received Ibuprofen for the first time after you removed me from Meloxicam on 12-16-19.
>
> 14. Admit that I was moved from Ibuprofen on 9-11-18.

*Id.* at 18–20. McArdle refused to answer these interrogatories and she denied the requests for admission on the ground that she had not yet received a copy of Cooper's medical records or any prison records and thus lacked knowledge or information sufficient to respond. In her opposition to Cooper's motion to compel, McArdle noted that although Cooper had signed a medical release form authorizing her to review his medical records, Cooper's records "cost nearly $600.00 for Defendant to obtain and Defendant has not yet received approval to expend these costs to obtain the medical records and does not have Plaintiff's medical records in her custody or control." Dkt. 61, ¶ 12 (emphasis in original). This response suggests that McArdle was in the process of obtaining Cooper's medical records at the time she filed her opposition brief on November 25, 2019. If she has obtained the records, then she has presumably also supplemented her discovery responses in accordance with Rule 26(e)(1), thereby mooting Cooper's motion to compel.

Because the status of this discovery dispute is unclear, I will reserve a decision on this aspect of Cooper's motion to compel until McArdle has provided an update about whether she

has been able to obtain Cooper's records and supplement her discovery responses. I will also give Cooper an opportunity to respond to McArdle's submission.

3. **Sanctions**

Cooper has filed two motions in which he asks me to sanction or admonish McArdle's counsel for litigation conduct that he perceives as unprofessional. In the first motion, he accuses McArdle's attorney of engaging in "tactical maneuver[s] to evade discovery." Dkt. 52, ¶ 10. He cites three decisions from other cases in which McArdle's counsel has appeared, arguing that they show that McArdle's counsel engages in "unfair and unethical discovery patterns in most cases he represents." *Id.* ¶ 9. But the three cases he cites each involve routine discovery disputes; none of them mention or imply sanctionable discovery misconduct on the part of McArdle's counsel. In his second motion, Cooper expresses frustration with some of McArdle's discovery requests to him, and he asks me to order McArdle's attorney to "maintain professional conduct." Dkt. 53, at 2.

I will deny both motions. I see nothing sanctionable about McArdle's counsel's conduct in this case. Just because Cooper and McArdle's counsel disagree about the appropriate scope of discovery does not mean that McArdle's counsel is being obstructionist or evasive. Discovery disputes are a routine part of litigation, and most of the time they can be resolved without resorting to court involvement and requests for sanctions.

B. **Motions related to spoliation of evidence**

The second set of motions relate to the alleged destruction of evidence relevant to Cooper's claims. Cooper asks me to sanction the defendants represented by the Department of Justice for intentionally destroying three pieces of material evidence: (1) the bottle of ibuprofen that Cooper used to overdose in December 2018; (2) surveillance footage of Cooper's

9

observation cell from April 15, 2019, when Cooper had an interaction with defendant Heather Schwenn that he says is relevant to his First Amendment retaliation claims; and (3) body camera footage of that same interaction, which Cooper says was recorded by Officer Kaufman, a non-defendant, at Cooper's request. Dkt. 66. In response, defendants indicate that the bottle of ibuprofen still exists and that they have furnished Cooper with photographs of it as proof. Dkt. 68, at 1. Cooper concedes that this moots the first part of his motion. Dkt. 75, at 2. Defendants say that the two pieces of video evidence don't exist, so those parts of Cooper's spoliation motion remain a live controversy.

1. **Observation cell surveillance footage**

One of Cooper's First Amendment retaliation claims against Schwenn arises out of his allegation that on April 15, 2019, while Cooper was in clinical observation, Schwenn refused to provide Cooper a blanket and extra pillow to punish him for filing lawsuits against her. *See* Dkt. 16, ¶¶ 4–15. Cooper says that "Schwenn falsely claim[s that] her reasoning for not providing Cooper a pillow and blanket was due to her having to terminate the visit with Cooper early because Cooper became upset and inappropriately started banging his genitals against the door." Dkt. 66, ¶ 21. Cooper says that the cell surveillance footage would disprove Schwenn's version of events and demonstrate her retaliatory intent.

For spoliation sanctions to be appropriate, Cooper must show that (1) defendants had a duty to preserve evidence because they "knew, or should have known, that litigation was imminent," and that (2) the destruction of the evidence "was done in bad faith," meaning that it was done "for the purpose of hiding adverse information." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Here, defendants contend that Cooper can't make either showing. They provide a declaration from Ellen Ray, the litigation coordinator at WSPF,

who notes that due to storage constraints, institution security cameras can store footage for only approximately 48 hours before it is recorded over. If footage is not manually retrieved by the time the camera reaches its capacity, the camera re-records over the existing footage. Although the institution will automatically preserve footage in some instances, such as when prison officials use force on an inmate, Ray says that "[t]he incidents in question in this lawsuit would not have been automatically preserved because they did not meet the criteria to be automatically preserved." Dkt. 69, ¶ 9. And although Cooper requested that the institution preserve the video footage in a grievance and in a motion in this case, he didn't make those requests until May 2019—weeks after the April 15 footage had been recorded over. *See* Dkt. 66-3 (grievance filed May 2, 2019) and Dkt. 9 (motion to preserve evidence filed May 6, 2019).

Cooper offers two arguments in response. First, he contends that regardless of when he made his formal preservation requests, Schwenn had a duty to ensure that the footage got preserved because she "knew about the filing of this lawsuit a[s] witnessed in her own first set of admissions." Dkt. 75, at 5. But the admission that Cooper cites does not show that Schwenn knew specifically that her April 15, 2019 encounter with Cooper would become the subject of litigation or that footage from that encounter would be relevant to Cooper's claims. The admission reads: "Admit that Cooper told you he was filing a lawsuit on you. RESPONSE: Admit. Plaintiff informs me he has filed or will be filing additional lawsuits against me every time he sees me or has an interaction with me." Dkt. 75-1, at 6. A prison official is not obligated to preserve recordings of each encounter she has with an inmate simply because the inmate frequently threatens to sue her.

11

Second, Cooper contends that Ray is lying about the institution security cameras' storage constraints. In a separate motion, he moves to sanction defendants and to strike Ray's declaration based on allegedly false statements in Ray's declaration. Dkt. 79. Cooper says that the WSPF cameras in fact "retain footage much longer than 48 hours . . . because Cooper has requested camera footage in support of false conduct reports prepared against him by staff members long after 48 hours. In each instance the video footage was requested then retrieved . . . without difficulty at Cooper's procedural due process hearings." *Id.* ¶ 4. Cooper cites two specific examples in which video footage related to a conduct report was reviewed more than 48 hours after the incident in question. But this shows only that someone manually preserved the footage in question (for use in the disciplinary process) prior to it being overwritten. It doesn't show that WSPF cameras have more than 48 hours of storage capacity. Cooper did not receive a conduct report on April 15, so there would have been no disciplinary reason for prison staff to manually preserve the footage.

Cooper hasn't demonstrated that defendants had a duty to preserve the surveillance footage of his encounter with Schwenn on April 15, let alone that defendants destroyed the footage in bad faith. So I will deny that portion of Cooper's motion for spoliation sanctions.

2. **Body camera footage**

Cooper contends that his interaction with Schwenn was also recorded by Officer Kaufman's body camera because Kaufman "stood there at [Cooper's] request recording th[eir] whole interaction." Dkt. 66, ¶ 23. Defendants dispute this. They say that Kaufman was not present at Cooper's cell on April 15, 2019 because he was not working that cell block on that day.[2] Dkt. 68, at 4. This prompted Cooper to file a motion seeking a telephone or video hearing

---

[2] Defendants do not provide any evidence to substantiate this assertion, such as a declaration

12

so that I may "resolve the issue whether or not [O]fficer Kaufman was or was not present." Dkt. 75, at 5.

I will deny Cooper's request as premature. Cooper hasn't submitted evidence that he actually asked WSPF to preserve the body camera footage allegedly recorded by Kaufman. Cooper made no mention of body camera footage in his grievance requesting preservation of video footage, which referred only to the footage taken by the institution security cameras. *See* Dkt. 66-3, at 1 ("The camera in cell A-401 will clearly show that on 4-15-19 at or around 7:55 AM her claim[] is false and is a result to further her agenda to retaliate for lawsuits filed on her. Please preserve observation video."). Cooper did refer to the body camera footage in the motion to preserve evidence that he filed in this case, *see* Dkt. 9, at 1, 2, but that request was addressed to the court, not to WSPF. Without any record that WSPF received a request from Cooper to preserve the alleged video, I cannot determine whether defendants were on notice that Cooper wanted the footage preserved, let alone whether they destroyed the evidence in bad faith.

For that reason, I will deny the remaining portion of Cooper's motion for spoliation sanctions. Cooper is free to renew the motion if he can provide evidence that he asked WSPF to preserve the body camera footage. If necessary, I will hold a hearing to resolve any factual dispute about whether Kaufman did in fact record Cooper's interaction with Schwenn on April 15, 2019. But Cooper should be aware that if I determine that he is being untruthful in his account of these events, I will dismiss his case as a sanction.

---

from Kaufman or a record of his shift assignment on April 15.

## C. Motion for reconsideration

Cooper asks me to reconsider my prior ruling declining to order WSPF to give him additional time in the law library. Dkt. 78. He says that the three hours of weekly law library time he currently gets is not enough to permit him to study, research, and prepare legal documents. He notes that there are currently 22 hours unaccounted for on the law library schedule that could be used by inmates like Cooper. Because law library time is so scarce, Cooper says, he and other inmates are forced to "lie, hide in closets, falsify documents," and engage in other deceitful conduct to get more time. *Id.* ¶ 8. They are also forced to rely on jailhouse lawyers for help, which can sometimes lead to problems.

I will not order WSPF to make a special exception to their library access policies for Cooper. If I were to do so, I couldn't justify denying similar relief to anyone else who asked. At this stage of the case, three hours per week should be more than sufficient to allow Cooper to handle his case responsibilities. Once Cooper comes within 30 days of a filing deadline, he will be entitled to additional time under WSPF policy. But currently there are no imminent filing deadlines or motions that Cooper needs to respond to, so I see no reason why Cooper would need additional law library time to effectively litigate this case.

ORDER

IT IS ORDERED that:

1. Plaintiff Demetrius Cooper's motion for a Rule 26(f) conference, Dkt. 50, is DENIED as moot.

2. Cooper's motion to compel, Dkt. 59, is DENIED in part and RESERVED in part. By April 16, 2020, defendant Sandra McArdle must provide an update about whether she has obtained Cooper's medical records and supplemented her responses to interrogatories 4–8 and requests for admission 2–14. Cooper may have until April 30, 2020, to respond to McArdle's submission.

3. Cooper's motions to sanction McArdle's counsel, Dkt. 51 and Dkt. 52, are DENIED.

4. Cooper's motion for spoliation sanctions, Dkt. 66, is DENIED.

5. Cooper's motion for sanctions and to strike the declaration of Ellen Ray, Dkt. 79, is DENIED.

6. Cooper's motion for a telephonic or video appearance, Dkt. 75, is DENIED.

7. Cooper's motion to reconsider the court's prior ruling on his motion to mandate better access to courts, Dkt. 78, is DENIED.

Entered April 2, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge