IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEMETRIUS COOPER,

                          Plaintiff,

        v.                                                    OPINION and ORDER

BRITTANY GUIDER, SANDRA MCARDLE,                              19-cv-159-jdp
MICHAEL KEMERLING, ALEXANDRIA LEIBERT,
AND HEATHER SCHWENN,

                          Defendant.

Plaintiff Demetrius Cooper is an inmate at the Wisconsin Secure Program Facility (WSPF). He challenges the medical and psychological care he that has received and the conditions of his confinement. He brings claims under the Eighth Amendment, First Amendment, and Wisconsin law against five prison officials. Most of Cooper's claims arise from incidents that follow a similar pattern. Cooper experienced a medical or mental health condition, and he contends that prison staff intentionally failed to meet his needs.

Cross-motions for summary judgment are now before the court. Many of the main underlying facts are undisputed, but the declarations submitted by the parties offer conflicting versions of why defendants responded as they did. In Cooper's version, defendants acted malevolently; in defendants' version, they responded reasonably out of concern for Cooper's well-being or prison order. For the most part, I conclude that the parties' evidence raises genuine disputes of material fact about defendants' conduct, so I will mostly deny the motions for summary judgment. A few of Cooper's claims are unsupported by admissible evidence, so I will grant defendants' motion in part.

PRELIMINARY MATTERS

Cooper has also filed discovery- and pleadings-related motions that I will decide before turning to the motions for summary judgment.

**A. Motion to strike**

Cooper moves to strike portions of defendant nurse practitioner Sandra McArdle's evidence. Dkt. 122. The heart of his motion is a challenge to three exhibits: (1) Cooper's WSPF medical records, Dkt. 119-1; (2) an article published in a prominent medical journal, Dkt. 119-2; and (3) a document titled "Highlights of Prescribing Information" for an anti-inflammatory drug called Meloxicam, available on the U.S. Food and Drug Administration's website but published by a pharmaceutical company, Dkt. 119-3. Cooper contends that the declaration of McArdle's attorney, Thomas Kallies, cannot properly authenticate these exhibits.

Cooper is correct that the Kallies declaration does not authenticate the medical records. Under Federal Rule of Evidence 901, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. For example, a proponent may provide testimony of a witness with knowledge that an item is what it is claimed to be. *Id.*

An attorney's declaration can sometimes authenticate evidence, if the declaration explains how the attorney has personal knowledge that the evidence really is what it purports to be. But Kallies doesn't work at the Department of Corrections (DOC) and he has no first-hand knowledge that the records are authentic. Kallies doesn't explain how he obtained the records, which could help ensure that they are unmodified copies of the documents as maintained by the DOC. But I will not grant Cooper's motion, because he relies on the same

2

records to support his case. Cooper does not contend that the records are not what they are claimed to be, so Cooper has waived any objection to authenticity of the medical records.

The two medical publications raise a different issue. I'll assume that the publications are authentic, because there is no reason to suspect that they are not fake. But that does not make them admissible. The articles are hearsay, because they are out-of-court statements offered to prove the truth of the matter asserted. Fed. R. Evid. 801. The avenue for admissibility is in Federal Rule of Evidence 803, under which statements in treatises, periodicals, and pamphlets are admissible if they are called to the attention of an expert witness at trial and an expert establishes the publication as a reliable authority. Fed. R. Evid. 803(18).

Nothing in McArdle's expert disclosure, Dkt. 104, indicates that she relied on either of the publications when making the treatment decisions that Cooper challenges, or otherwise supports the application of Rule 803. The two medical publications are not admissible, so I will grant this part of Cooper's motion.

## B. Motion for sanctions

Cooper contends that psychiatric associate Schwenn makes several false statements in her declaration, Dkt. 114. Dkt. 148. He moves for sanctions under Federal Rule of Civil Procedure 11. Dkt. 148. In the alternative, he asks the court to strike Schwenn's declaration in its entirety.

Rule 11 sanctions may be imposed if a party knowingly makes false statements in its filings. But relief under Rule 11 would be available only after Cooper follows the procedures under the rule, which require Cooper to notify Schwenn of his intent to seek sanctions so that Schwenn might correct or withdraw the filing. Fed. R. Civ. P. 11(c)(2). Cooper hasn't followed the required procedure, which is reason enough to deny the motion.

But even if I were to consider the merits of Cooper's motion, I would deny it. Disputes over the truth of declaration statements are generally a contested matter to be decided by the jury. Cooper has not shown that Schwenn's declarations statement are knowingly false; to the contrary, she has supported much of her declaration with corroborating evidence. The motion for sanctions is denied.

## C. Motion for leave to file sur-reply

Cooper asks to file a sur-reply in response to McArdle's summary judgment reply brief. Dkt. 147. The court generally looks upon sur-replys with disfavor. But I will grant Cooper's motion because he is pro se litigant. The arguments Cooper raises in his sur-reply largely overlap with those raised in his brief in opposition and in other filings in this case. I see no significant prejudice to defendants.

## BACKGROUND

Cooper has been a prisoner at WSPF since May 2018. Prior to arriving at WSPF, but while in Department of Corrections custody, he injured his wrist in 2016 and developed a frozen shoulder from a flu vaccination in 2017. Frozen shoulder is a condition that results in stiffness, pain, and immobility in the shoulder joint which can last for one to three years.[1] Cooper sought frequent care at WSFP for his wrist and shoulder. He also suffers from gastrointestinal reflux disorder (GERD) and he has a history of self-harm and suicide attempts.

The defendants are WSPF employees Brittany Guider (formerly Roach) and Alexandria Leibert, both corrections officers, Michael Kemerling, a nurse in WSPF's health services unit,

---

[1] Mayo Clinic, "Frozen Shoulder," accessed November 9, 2020, https://www.mayoclinic.org/diseases-conditions/frozen-shoulder/symptoms-causes/syc-20372684.

and Heather Schwenn, a Psychological Associate in WSPF's psychological services unit. The fifth defendant, Sandra McArdle, is a nurse practitioner who works for a private company that contracts with the DOC to provide services at WSPF.

Cooper's lawsuit arises from a series of incidents at WSPF between September 2018 and April 2019. He contends that defendants deprived him of adequate medical care for his wrist and shoulder injuries, his GERD, and his mental health conditions, denied him humane conditions of confinement, and retaliated him against him for making complaints and filing this lawsuit. I will describe each incident in greater detail in the analysis section.

ANALYSIS

Cooper brings claims under the Eighth Amendment, First Amendment, and Wisconsin negligence and medical malpractice law. Defendants move for summary judgment on all of Cooper's claims; Cooper moves for partial summary judgment.

At summary judgment, the moving party must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in favor of the non-moving party. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

Where parties have filed cross-motions for summary judgment, the court looks "to the burden of proof that each party would bear on an issue at trial," and then requires that party to establish a genuine issue of material fact. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461

(7th Cir. 1997). If any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment against that party is appropriate. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatlovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990). The court reviews the cross-motions construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quotations omitted).

Cooper's claims arise from six incidents, which I address in turn.

### 1. Denial of ice by defendant Guider

Cooper brings an Eighth Amendment claim against correctional officer Guider for denying him ice for his wrist and shoulder injuries. The following facts are undisputed. Cooper had a prescription for ice during the fall of 2018 to treat his wrist and frozen shoulder. Dkt. 126-29. Under WSPF rules, ice is distributed to inmates at their cells during medication pass on an "as needed" basis. Guider was the corrections officer responsible for medication pass several days per week in September and October 2018. Cooper asked Guider for ice during medication pass, but she declined to provide it to him.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A serious medical need is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73

(7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

A defendant consciously disregards an inmate's need when they know of and disregard an excessive risk to an inmate's health or safety. *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* Inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment under the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Defendants move for summary judgment on grounds that: (1) Cooper's injuries weren't a serious medical need; and (2) Guider denied Cooper's ice because she was unable provide to him it under prison rules.

As for the first ground, Cooper first must show that his wrist and shoulder injuries amounted to a serious medical need. Generally, treatable pain is considered a serious medical need that cannot be disregarded. *See, e.g., Thompson v. Godinez*, 561 F. App'x 515, 518 (7th Cir. 2014). Cooper's health records indicate that his injuries caused him serious and chronic pain. He consistently sought care for his pain and rated it an "eight out of ten" and "a thousand" to medical providers. Medical staff recognized Cooper's pain and provided him with a rotating regimen of therapies, including physical therapy, ice, injections, pain relievers, and anti-inflammatories. *See* Dkt. 126, ¶¶ 6–44. Cooper has adduced evidence that his injuries were serious enough to meet Eighth Amendment standards.

As for the second ground, Cooper must adduce evidence that Guider lacked a valid reason for denying his ice. Defendants don't deny that Guider was aware of Cooper's ice

prescription. Instead, Guider contends in her declaration that she refused to give him ice because he wouldn't follow the correct procedure for requesting it. Dkt. 111, ¶¶ 10−12. Guider points to DAI Policy 500.80.11, which governs medication pass and provides that prison staff announce medication pass over a unit's intercom system before it begins. Dkt. 111-1. At that point it is an inmate's responsibility to request any "as needed" medications they have been prescribed, such as ice. *Id*. Guider says that WSPF inmates must ask for as needed medication requests using the intercom in their cell. Dkt. 111. It states that WSPF followed the policy but that Cooper insisted on asking for ice when she passed his cell in the middle of medication pass. Dkt. 111, ¶¶ 9−18. By then, Guider's declaration says, it was too late to get Cooper's ice because it would have delayed medications for other inmates and set a bad precedent. *Id.*

But Cooper disputes Guider's declaration with his own declaration. Cooper says that WSPF didn't follow the policy of announcing medication pass. Dkt. 134, ¶ 7. This forced him to request ice when the officer doing medication pass walked by his cell. *Id.* To corroborate his statement, Cooper offers a document responding to one of his inmate complaints. Dkt. 134-6. It states that the sergeant for Cooper's unit "reported he does not always announce medication pass as the Officers have been stopping at the cells asking inmates about [as needed] medication." (The corroborating evidence might be hearsay, but defendants did not object to it.)

Cooper's verified complaint also states that when he asked Guider for ice, he explained his injuries and told her that he needed ice for pain and inflammation. Dkt. 8, ¶¶ 10−13. He says that she responded, "I'm not getting anything for you," and "I don't care what it's for so you can just stop asking." *Id.*

8

Based on the evidence each party presents, whether Guider denied Cooper's ice out of contempt or because he didn't follow medication pass rules is genuinely disputed. Defendants' motion for summary judgment is denied.

### 2. Discontinued Meloxicam by defendant McArdle

#### a. Eighth Amendment medical care claim

Cooper contends that nurse practitioner McArdle discontinued his prescription for anti-inflammatory drug Meloxicam without assessing him or providing a substitute. The parties agree that Cooper had been taking Meloxicam since 2017. Dkt. 126-11. It is also undisputed that on December 1, 2018, Cooper was notified that his prescription had ended. Dkt. 65-2. McArdle moves for summary judgment.

Again, under the Eighth Amendment, the first question is whether Cooper had a serious medical need. I've already concluded that Cooper's wrist and shoulder injuries qualify as a serious medical need because they cause ongoing pain. Cooper says that he suffered severe pain and inflammation after being removed from Meloxicam, and he filed numerous inmate complaints about it. *See* Dkt. 65-3—7.

The real issue is whether McArdle removed Cooper from Meloxicam for a medical reason. To establish that a medical professional consciously disregarded an inmate's serious medical need, a plaintiff must show that the challenged treatment decision was so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). An inmate has no right to demand specific care or the medication of his choosing, and is not entitled to the best care possible. *Norfleet v. Webster*, 439 F.3d 39, 396 (7th Cir. 2006). But an inmate is entitled to reasonable measures to prevent harm. *Id.*

McArdle does not submit a declaration or explain her decision to remove Cooper from Meloxicam. Her summary judgment briefs contend that her decision was reasonable because Cooper was receiving "numerous medications" for his wrist and shoulder, including other anti-inflammatories, when his Meloxicam was discontinued. Dkt. 117, at 5−6 and Dkt. 142, ¶ 3. But the evidence she adduces—portions of Cooper's medical records—doesn't clearly show what Cooper was prescribed at the time. *See* Dkt. 126-29. Cooper's declaration asserts that Meloxicam was the only anti-inflammatory he was receiving then. *Id.*, at ¶ 40. Cooper says that ice was the only other treatment available after the Meloxicam was discontinued.

Whether McArdle discontinued Cooper's only anti-inflammatory drug without providing a substitute and whether that decision could have been based on medical judgment are genuinely disputed. McArdle's motion for summary judgment is denied.

### b.  State law medical malpractice claim

Cooper also brings a state law medical malpractice claim against McArdle for discontinuing his Meloxicam.[2] Under Wisconsin law, a negligence or medical malpractice claim requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *Paul v. Skemp,* 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860.

Wisconsin law generally requires expert testimony to establish medical negligence. *Gil v. Reed,* 535 F.3d 551, 557 (7th Cir. 2008). Expert testimony is not required in the unusual

---

[2] McArdle is employed at a company that contracts with the DOC and thus qualifies as a "health care provider" under state medical malpractice law, so Wisconsin's notice of claim requirements do not apply to this claim. Wis. Stat. § 655.001-002; Wis. Stat. § 893.82.

case in which a layperson could conclude from common experience that the plaintiff's injury could not have occurred if the medical provider had exercised proper care and skill. *Id.*

Cooper has no expert witness. If Cooper can show that McArdle's decision to discontinue Meloxicam was the result of malevolence or the complete abdication of medical judgment, he will establish an Eighth Amendment violation for which expert evidence is not required. But if the case comes down to whether McArdle's medical judgment was reasonable, that is not a question that a layperson can answer, and Cooper would require expert evidence. Because Cooper does not have that expert evidence, I will grant McArdle's motion for summary judgment on Cooper's state-law medical negligence claim against her.[3]

### 3. Providing ibuprofen by defendants Kemerling and Leibert

#### a. Eighth Amendment medical care claim

Cooper contends that nurse Kemerling and corrections officer Leibert provided him with ibuprofen that he was not permitted to have and that he later used in a suicide attempt. The parties have filed cross motions for summary judgment on this claim.

The following facts are undisputed. After Cooper was taken off Meloxicam, he filed several complaints with health services reporting pain and inflammation over the course of two weeks. On December 16, nurse Kemerling saw Cooper to address his medication and pain concerns. Kemerling prescribed him with ibuprofen. Because Cooper had a history of suicide attempts, he had a "no-keep-on-person" (no-KOP) restriction. *See* Dkt. 126-26. This meant

---

[3] Cooper, as a pro se litigant, has no realistic opportunity to develop the expert evidence needed to press a medical negligence claim. If I thought that Cooper had any reasonable possibility of prevailing on a serious medical negligence claim, I would consider trying to recruit volunteer counsel to represent Cooper. Cooper is a reasonably skilled pro se litigant, and he has presented nothing that would persuade me to expend the scarce resource of a volunteer attorney on this claim.

that he was not permitted to keep medications, including Tylenol, ibuprofen, or cough medicine, on his person or in his cell.

Later that evening, despite the no-KOP restriction, corrections officer Liebert was handing out keep-on-person medications to inmates during medication pass, and she gave Cooper the three-day supply of ibuprofen that Kemerling had prescribed. Cooper, in an apparent suicide attempt, swallowed the contents of the entire bottle that evening. Health staff checked his vitals, determined that he needed medical attention, and brought him to the hospital. Cooper was treated successfully and survived.

Cooper has established the first element of an Eighth Amendment medical treatment claim. The risk of suicide is an objectively serious medical condition, and it is well established that officials may not consciously disregard this risk. *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019).

To establish the second element, Cooper must show that Kemerling and Liebert were aware of Cooper's no-KOP status but gave him large quantities of ibuprofen anyway. I'll begin with Kemerling, who authorized Cooper's prescription without the no-KOP restriction. Kemerling states in his declaration that he wasn't aware of Cooper's no-KOP status. He explains that WSPF had switched from paper to electronic medical records in early December 2018. Kemerling concedes in his declaration that he wasn't fully trained when he electronically ordered Cooper's prescription, but he says that the system didn't alert him to a no-KOP restriction, so he prepared Cooper's prescription to be given to him later during medication pass. Dkt. 113, ¶¶ 11, 20. According to Kemerling, Cooper didn't mention his restriction or say that he was feeling suicidal during their appointment. *Id.*, at ¶ 22.

Cooper's declaration offers a different version of events. He says that he told Kemerling at the appointment that he was on no-KOP status, was feeling "mental anguish," and planned to use the ibuprofen to attempt suicide. Dkt. 91, ¶¶ 44−46. Cooper's declaration says that Kemerling responded, "you'll be fine they're only for three days," and tried to give him the bottle of pills on the spot. *Id.* Whether Kemerling was aware of Cooper's restriction and suicidal feelings is therefore genuinely disputed.

Leibert gave Cooper the bottle of ibuprofen during medication pass later that evening. Leibert's declaration also asserts that she didn't know about Cooper's no-KOP restriction. She says that it was not on the label of his prescription bottle and that no warnings appeared through the computer system she used when distributing medications. Dkt. 110, ¶¶ 8−11. Her declaration admits that no-KOP restrictions were sometimes listed on a whiteboard in the unit, but she says she probably didn't see it. Leibert says that she only learned about Cooper's restriction from another corrections officer after she had given him the pills. At that point, Leibert says, she immediately returned to Cooper's cell to get the medication back. But he swallowed the bottle's contents despite her orders not to.

Cooper disputes parts of Leibert's account. His declaration states that when Leibert came to his cell to give him his prescription, Cooper told her about his restriction, that he was feeling suicidal, and that he would use the pills to attempt suicide. Dkt. 91, ¶ 48. He states that she responded, "you can do whatever you want with them, I don't care. [Health staff] knows you're on a no-KOP restriction as well . . . I'm giving them to you and if you overdose it's not on me." *Id.,* at ¶ 50. Cooper's declaration says that she returned to his cell shortly after and taunted him by saying, "I see you're still alive so you must not have taken [the pills] so you can't be as suicidal as you say you are." *Id.,* at ¶ 51. Cooper also adduces the declaration

13

of inmate Maurice Collins, who says that he overheard the exchange. Dkt. 93. Collins's declaration states that he too told Liebert about Cooper's restriction; he says that the restriction was listed on the unit's whiteboard. *Id.,* at ¶¶ 19−26.

Some of Cooper's declaration statements strain credulity, particularly his accusations that prison staff made callous comments about his wellbeing and told him that they took certain actions to punish him. But the court's role at summary judgment is not to weigh credibility. Whether Liebert had knowledge that Cooper had a no-KOP restriction and felt suicidal but gave him a bottle of ibuprofen anyway is genuinely disputed.

I will deny both side's motions for summary judgment on Cooper's Eighth Amendment claim arising from the ibuprofen incident.

### b.  State law negligence claim

Cooper also contends that Kemerling and Liebert were negligent under state law for giving him the ibuprofen. Under Wisconsin law, Cooper is required to file a notice of claim with the Attorney General's office before filing a civil action against state employees.[4] Wis. Stat. § 893.82; *Estate of Hopgood ex rel. Turner v. Boyd*, 2013 WI 1, ¶ 20 n.11, 345 Wis. 2d 65, 825 N.W.2d 273. Because he is a prisoner, he may not file suit until the Attorney General denies the claim or 120 days after the written notice is served on the Attorney General, whichever is earlier. Wis. Stat. § 893.82. The Attorney General received Cooper's notice of claim on February 19, 2019, Dkt. 109-1, but Cooper filed this lawsuit on February 27, 2019,

---

[4] Liebert is a corrections officer, so this claim is based on common law negligence and is subject to Wisconsin's notice of claim requirements. Kemerling is a state-employed nurse, a position that is not covered by Wisconsin's medical malpractice statute; this claim is also subject to notice of claim requirements. Wis. Stat. § 655; *see Smith v. Hentz*, No. 15-CV-633-JDP, 2018 WL 1400954, at *1-3 (W.D. Wis. Mar. 19, 2018); Wis. Stat. § 655

Dkt. 1. Cooper failed to satisfy Wisconsin's notice of claim requirement and so may not proceed on state law negligence claims.

### 4.  Observation placement from December 17-18, 2018

#### a.  Eighth Amendment conditions of confinement claim

Cooper contends that Schwenn, a psychological clinician, denied him soap and a washcloth to clean himself when he was sick with diarrhea following his suicide attempt. The parties have filed cross motions for summary judgment.

The following facts are undisputed. After overdosing on ibuprofen, Cooper was released from the hospital on December 17 at 2:15 am. He was immediately placed in observation status, which is used to monitor inmates at risk of self-harm until their mental state improves. Inmates in observation status are checked on frequently and psychologically evaluated daily. A psychological services unit clinician is responsible for deciding what property, such as a blanket, soap, or toilet paper, an inmate safely can have. Schwenn was the clinician who was responsible for observation status inmates when Cooper arrived. When she went to Cooper's cell to evaluate him several hours after he arrived in observation, Cooper requested soap and a washcloth. Schwenn declined to authorize these items.

An Eighth Amendment conditions of confinement claim has two elements. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). First, the conditions at issue must be "sufficiently serious" so that they resulted in the denial of the minimal civilized measure of life's necessities. *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014). Second, the official must have acted with deliberate indifference to those serious conditions. *Id.*

Cooper satisfies the first requirement because spending two days caked in feces with no means to clean one's self amounts to a denial of civilized necessities. *See Rice ex rel. Rice v. Corr.*

*Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). The question is whether Schwenn was indifferent to the conditions Cooper was experiencing.

Cooper's declaration says that when Schwenn came to evaluate him, he told her that his charcoal treatment was giving him frequent diarrhea, that he had feces smeared on his hands and buttocks, and that wiping with toilet paper felt like "wiping with alcohol and razors." Dkt. 91, ¶ 57. He says that Schwenn refused to authorize him any property, stating, "I've been waiting to see you back in clinical observation to I can teach you a lesson for filing that complaint against me, now you're going to eat shit out of the hands that you wrote that complaint with." *Id.*, at ¶ 58.  Cooper says that Schwenn didn't return and that he spent two days eating and sleeping in his own soil.

Schwenn's declaration provides a different account. She says that she wasn't aware of Cooper's diarrhea because he never told her about it. She says that she didn't authorize Cooper the property because when she tried to evaluate him, he had covered his window with toilet paper and refused to talk to her. Dkt. 114, ¶ 40. When she tried to evaluate him a second time, Schwenn's declaration says, Cooper was lying on the floor of his cell masturbating. *Id.*, at ¶ 42. She says that his behavior prevented her from fully assessing his mental state so she couldn't decide what property would be safe for him to have. *Id.*, at ¶¶ 39–44. Schwenn denies telling Cooper to "eat shit out of he hands that you wrote that complaint with." *Id.*, at ¶¶ 45, 47. Cooper denies that he covered his camera or masturbated on his floor. *Id.*, at ¶¶ 97, 99 and Dkt. 28-1.

Whether Schwenn knew about Cooper's unsanitary conditions and why she didn't give him soap and a washcloth are genuinely disputed. The court will deny the parties' motions for summary judgment.

16

### b. First Amendment retaliation claim

Cooper contends that Schwenn denied him soap and a washcloth because he filed complaints against her. To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take the actions that the resulted in the deprivation. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2006).

Filing an inmate complaint is protected First Amendment activity, so Cooper meets the first element. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). He also meets the second element: the unsanitary conditions that he describes would likely deter First Amendment activity in the future.

As for the third element, I have already concluded that Schwenn's reason for denying Cooper soap and a washcloth are genuinely disputed. Specifically, Cooper's points to Schwenn's comments that she wanted to "teach him a lesson" and that he could "eat shit out of the hands that you wrote that complaint with." Dkt. 91, ¶ 58. Schwenn denies having made these statements and says that she would not have treated Cooper any differently if he hadn't filed his complaints. But if Cooper is believed, her statement would be sufficient to establish a causal link between Cooper's complaints and Schwenn's decision to deny him property. Summary judgment is denied.

### 5.  Observation placement from November 26-29, 2018

Cooper brings a claim against Schwenn for denying him a cloth smock and a blanket in observation despite extremely cold temperatures in his cell. The parties have filed cross-motions for summary judgment.

These facts are undisputed. On November 26, 2018 at 6:00 pm, Cooper put a sheet around his neck and threatened to commit suicide, prompting prison staff to place him on observation status. Cooper was clothed in only a paper gown overnight. Schwenn evaluated him the next morning, on November 27, when he asked for a blanket, cloth smock, and bedding because he was cold. He didn't immediately receive these items.

Defendants deny that Schwenn was personally involved in depriving Cooper of a blanket and smock, which is required for liability under section 1983. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). But I don't need to decide that issue because Cooper fails to adduce evidence that the cell temperatures he experienced were cold enough to violate the Eighth Amendment.

Inadequate heating violates the Eighth Amendment when temperatures amount to "extreme cold." *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). However, prison conditions may be severe and uncomfortable without being unconstitutional. *Id.* at 642. When assessing claims based on low cell temperatures, courts consider several factors: the severity of the cold; its duration; the availability of adequate alternative means to stay warm; and the presence of other uncomfortable conditions. *Id.* at 644. Although the Seventh Circuit has not articulated a bright-line rule for indoor cell temperatures that amount to extreme cold, that threshold is around 60 degrees, depending on the other conditions an inmate is exposed to. *See Chandler v. Baird*, 926 F.2d 1057, 1063, 1065 (11th Cir.1991) (housing a prisoner for 16 days

in a 60 degree cell in only his underwear, without soap, a toothbrush, and water for two days violated the Eighth Amendment); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir.1987) (cell temperatures of 52 or 54 degrees are unconstitutionally cold but temperatures of 68 to 72 are not); *Gruenberg v. Tetzlaff*, No. 13-cv-95-wmc, 2015 WL 5440615, at *6 (W.D. Wis. Sept. 15, 2015) (cell temperature of 60 degrees without clothing or blanket was not uncomfortable enough to violate the Eighth Amendment).

Defendants adduce the declaration of WSPF's grounds superintendent. Dkt. 115. The declaration reports that discharge air temperature readings at WSPF were between 71- and 73-degrees Fahrenheit at all times and in all areas of the building. The declaration adds that the heating system was working properly in November 2018. Defendants submit records showing that Cooper was given a smock and blanket within 24 hours of being placed in observation.

In Cooper's declaration, he denies having received a blanket or cloth smock at any point during his observation stay. His declaration describes his cell was "ice cold" and felt like "ten below zero," and says that Cooper could not feel his hands or feet. Dkt. 141, ¶ 42 and Dkt. 28, ¶ 15. Cooper adduces the declaration of inmate Joshua Braithwaite, who attests to "shivering from the harsh ice cold temperatures" and says that he saw Cooper shivering and heard his teeth chattering. Dkt. 136, ¶¶ 8,11,13. Cooper cites almanac entries reporting that the outdoor temperatures from November 26-28, 2018 in WSPF's location ranged from 12.9 to 33.1 degrees Fahrenheit. Dkt. 28-12−15.

The discharge air temperature of 71 to 73 degrees doesn't definitively show the temperature in a specific cell in WSPF. Without clothing or a blanket, indoor temperatures in the low 70's would likely feel uncomfortable, but those temperatures do not violate the Eighth

Amendment. Defendants' evidence is enough to show that cell temperatures at WSPF meet the constitutional minimum, at least in the absence of evidence to dispute it.

Cooper's evidence is not enough to raise a genuine dispute. The outside temperature is irrelevant, and Cooper's assertion that his cell felt like ten below zero is an utter exaggeration. Cooper's description of his cold cell is otherwise purely subjective. Cooper does not contend that the heating system was broken or point to any objective temperature indicators in his cell, such as broken windows, window frost, or freezing water. With the evidence he has adduced, he cannot establish that the temperature in the observation cell fell below the constitutional threshold. Defendants motion for summary judgment is granted.

### 6. Observation placement from April 14-17, 2019

#### a. Eighth Amendment conditions of confinement for denial of blanket

Cooper's final set of claims stem from a stay in observation several months after his suicide attempt, in April 2019. He again contends that Schwenn denied him a blanket in spite of the cold temperatures in WSPF's observation unit. Defendants move for summary judgment.

The parties' evidence is essentially the same as the evidence adduced for Cooper's conditions of confinement claim based on his placement in observation in November 2018. I conclude that Cooper's evidence is insufficient to establish that the temperature in his cell fell below the constitutional threshold.  I will grant defendants' motion for summary judgment on this claim.

#### b. Eighth Amendment medical care claim for denial of pillow

Cooper also contends that Schwenn denied him a medically necessary pillow during the April 2019 observation placement. Defendants move for summary judgment.

The following facts are undisputed. On April 14, WSPF staff placed Cooper in observation status because he reported having suicidal thoughts and wanting to cut himself. Cooper was suffering from GERD at the time, and health services had permitted to him to have an extra pillow to reduce his symptoms. *See* Dkt. 134-11. When Cooper arrived in observation, he informed Schwenn that he was allowed a pillow and asked her to authorize one for him. Schwenn declined to do so.

As previously explained, to prevail on an Eighth Amendment medical care claim, a plaintiff must show that they have a serious medical need and that prison officials consciously disregarded that need. The Seventh Circuit has held that GERD may qualify as a serious medical need. *See Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015).

Defendants contend that Schwenn had reasonable justifications for denying Cooper's pillow. First, Schwenn says in her declaration that when she contacted health services about Cooper's pillow, she was told that he didn't require one. Dkt. 114, ¶ 59. Second, Schwenn's declaration says that pillows pose a suffocation risk to inmates and that she didn't think it was safe for Cooper to have one. *Id.,* at ¶ 63. She admits that health services "possibly told [her] later that [Cooper] had a restriction for a pillow." *Id.*, at ¶ 118. But she says that Cooper was behaving in self-destructive and concerning ways until he was released, and that she feared for his safety.

Cooper disputes Schwenn's explanation. He offers declarations from inmates Ladell Madlock and Jeremy Lockett, who state that they overheard Schwenn ask health services if Cooper was permitted to have a pillow. Dkt. 28 and Dkt. 29. The inmates say they "clearly" heard a nurse reply, "Yes Cooper does have a medical condition that requires him to have a pillow." *Id*., at ¶ 11.  Their declarations say that Schwenn returned to Cooper's cell and lied

21

about what health services had told her. The inmates also say that Schwenn told Cooper that she "doesn't authorize pillows and blankets for people who haves filed lawsuits against her." *Id.*, at ¶ 7.

Again, the parties' evidence raises a genuine dispute over whether Schwenn knew about Cooper's medical need for a pillow and why she denied it. Summary judgment is denied.

### c. First Amendment retaliation claim

Cooper also contends that Schwenn denied him a pillow and blanket to retaliate against him for filing inmate complaints and this lawsuit against her. Defendants move for summary judgment. Cooper's declaration says that Schwenn said that she doesn't authorize property for people with lawsuits against her. Schwenn's declaration denies making these statements. The parties' evidence raises a genuine dispute over whether Cooper's complaints and lawsuit played a role in Schwenn's decision to deny him a pillow and blanket. I will deny summary judgment.

CONCLUSION

The parties' evidence has raised genuine disputes of material fact in the following Eighth and First Amendment claims: (1) defendant Guider's denial of ice, (2) defendant McArdle's decision to discontinue Cooper's Meloxicam, (3) defendants Kemerling and Liebert's decision to give Cooper a bottle of ibuprofen; (4) defendant Schwenn's refusal to authorize Cooper to receive soap and a washcloth while he was sick with diarrhea; and (5) defendant Schwenn's refusal to authorize Cooper to receive a pillow for his GERD. The parties' motions for summary judgment on these claims are denied.

I will grant defendants' motions for summary judgment on Cooper's negligence and medical malpractice claims under state law, as well as on Cooper's Eighth Amendment

22

conditions of confinement claims based on cold temperatures in his observation cell. Cooper's

motions for summary judgment are otherwise denied.


# ORDER

IT IS ORDERED that:

1. Plaintiff Demetrius Cooper's motion to strike, Dkt. 122, is GRANTED in part and DENIED in part;

2. Plaintiff's motion for sanctions, Dkt. 148, is DENIED;

3. Plaintiff's motion for leave to file a sur-reply, Dkt. 147, is GRANTED;

4. Plaintiff's motion for partial summary judgment is DENIED;

5. Defendants Guider, Kemerling, Leibert, and Schwenn's motion for summary judgment is DENIED in part and GRANTED in part;

6. Defendant McArdle's motion for summary judgment is DENIED.


Entered November 12, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge